Erick **JESIEK**, David Jackson, Walter Steil, Christopher White, Darwin Jones, Tressia Skinner, and employees similarly situated, Plaintiffs,

v.

**FIRE PROS, INC.**, Defendant.

No. 1:09–cv–123.

United States District Court, W.D. Michigan, Southern Division.

May 17, 2011.

Jason J. Valtos, Natalie Cater Moffett, Osborne Law Offices PC, Washington, DC, Katherine Smith Kennedy, Pinsky Smith Fayette & Kennedy LLP, Grand Rapids, MI, for Plaintiffs.

Gregory Patrick Ripple, Peter J. Kok, Miller Johnson PLC, Grand Rapids, MI, for Defendant.

*OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AS A COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b) AND JUDICIAL NOTICE*

PAUL L. MALONEY, Chief Judge.

Before this Court is Plaintiffs' motion for conditional certification as a collective action. (ECF No. 24.)

Plaintiffs filed their complaint on February 12, 2009. Plaintiffs are current and former employees of Defendant Fire Pros. On March 30, by leave of the court, Plaintiff filed an amended complaint. The amended complaint ("Complaint") alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* and retaliation. (ECF No. 13.) Plaintiffs allege, among other things, they were not properly paid for time worked in excess of forty hours each week.

On April 15, 2009, a Case Management Order ("CMO") issued. (ECF No. 17.) The CMO required the parties to complete discovery on the question of whether other employees are similarly situated no later than June 1, 2009. (*Id.* ¶ 5b.) The CMO directed Plaintiffs to file this motion no later than June 22, 2009. Plaintiffs filed an unopposed motion for an extension of time, 30 days, to file the motion for conditional certification. (ECF No. 20.) The motion was granted. (ECF No. 21.) This motion was filed July 21, 2009. (ECF No. 24.) Defendant Fire Pros filed is response. (ECF No. 25.) Plaintiffs filed a reply. (ECF No. 26.) The court has reviewed the motion and briefs, as well as relevant authority. Oral argument is not necessary to resolve the motion.

## I. BACKGROUND

Defendant Fire Pros is a fire-protection company that, among other things, installs fire-sprinkler systems. (Def. Ex. 1–Robert Proos Dec. ¶ 3.) Fire Pros employs seventy people, forty-three of whom are considered field employees. (*Id.* ¶ 6.) The field employees include eleven sprinkler installers, twenty-three service technicians, and the remaining nine serve fire alarm and kitchen hood systems. (*Id.*)

Plaintiffs Erick Jesiek, David Jackson, Walter Steil, Christopher White, Darwin Joles, and Tressia Skinner are or were hourly, nonexempt, sprinkler fitters for Fire Pros. (Compl. ¶ 3; Proos Dec. ¶ 7.) At the beginning of each work day, Erick Jesiek and David Jackson would report to the Fire Pros shop to load company vehicles and then travel in those vehicles to job sites. (Pl. Ex. 1–Jackson Dec. ¶¶ 6; Pl. Ex. 2–Jesiek Dec. ¶¶ 6.) At the end of each day, Jesiek and Jackson would return to the Fire Pros shop in the company vehicles and unload the vehicles. (Jackson Dec. ¶¶ 8; Jesiek Dec. ¶¶ 8.) Jesiek and Jackson were paid for travel time

to and from the job sites. (Jackson Dec. ¶ 11; Jesiek Dec. ¶ 11.) Their rate of pay for travel time was lower than their rate of pay for work at the job sites. (Pl. Ex. 3–Payroll Check Register, Jackson PgID 134–151 and Jesiek PgID 152–168; Proos Dec. ¶ 9.) The travel hours, however, were not included in the total hours worked each week for the purpose of calculating overtime. (Jackson Dec. ¶¶ 11; Jesiek Dec. ¶¶ 11; Pl. Ex. 5–Jesiek Daily Activity Report Summaries PgID 286 and 297; Pl. Ex. 6–Putative Plaintiff Activity Report Summary PgID 308.)

Based on observations and conversations, Jackson and Jesiek aver that other field employees also reported to the Fire Pros shop to load vehicles before traveling in those vehicles to job sites. (Jackson Dec. ¶ 7; Jesiek Dec. ¶ 7.) Based on observations and conversations, Jackson and Jesiek aver that other field employees were paid for their travel time, but that travel time was not included in the total time worked each week for the purpose of calculating overtime. (Jackson Dec. ¶ 13; Jesiek Dec. ¶ 13.) Fire Pros contends that only installers were paid at a lower travel rate, while its other field employees were paid a regular rate, regardless of whether the employee was traveling or working on the job site.[1] (Proos Dec. ¶ 10.)

## II. DISCUSSION

### A. CONDITIONAL CERTIFICATION

The FLSA requires covered employers to pay their nonexempt employees at a rate of time-and-a-half for all hours worked each week over forty hours. 29 U.S.C. § 207(a)(1); *Whisman v. Ford Motor Co.,* 157 Fed.Appx. 792, 796 (6th Cir.2005) (unpublished). When an employer violates this provision, the FLSA authorizes an employee to sue his or her employer "for and in behalf of himself or themselves and other employ-

ees similarly situated."[2] 29 U.S.C. § 216(b). A suit brought under § 216(b) is called a "collective action" and is distinct from a "class action" suit brought under Fed. R.Civ.P. 23. *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir.2006). FLSA collective action suits are not subject to the numerosity, commonality, typicality, and representativeness requirements of class action suits. *See O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 584 (6th Cir.2009). Also, unlike class actions where plaintiffs may opt out of the suit, in a collective action, putative plaintiffs must opt into the suit. *Id.* at 583. "These opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action." *Id.*

For the action to proceed as a collective action, the court must be satisfied that all the plaintiffs are "similarly situated." *See* 29 U.S.C. § 216(b); *O'Brien,* 575 F.3d at 583. Unfortunately, the FLSA does not define the term "similarly situated," or provide any guidance as to how the term should be interpreted. *See O'Brien,* 575 F.3d at 584. The Sixth Circuit Court of Appeals has declined "to create a comprehensive criteria for informing the similarly situated analysis." *Id.* at 585; *see Morgan v. Family Dollar Stores,* 551 F.3d 1233, 1259–60 and n. 38 (11th Cir. 2008) (declining to establish a formal approach to determining whether plaintiffs are similarly situated and noting other circuit courts have taken the same approach). "The lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *O'Brien,* 575 F.3d at 584. A district court's certification rulings in an FLSA action fall within the court's discretion. *Id.* (adopting the Eleventh Circuit's approach to review collective-action certification decisions for abuse of discretion).

Federal courts typically follow a two-stage certification process for determining whether

1. Fire Pros does not state whether travel time for hourly employees other than installers is included in calculating overtime.

2. The relevant portion of the § 216(b) provides: An action ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in

behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.
29 U.S.C. § 216(b).

all plaintiffs are similarly situated.[3] *See id.* at 583; *Lindberg v. UHS of Lakeside, LLC,* 761 F.Supp.2d 752, 757 (W.D.Tenn.2011); *Wlotkowski v. Michigan Bell Tel. Co.,* 267 F.R.D. 213, 217 (E.D.Mich.2010). The first stage has been referred to as the "notice stage" or "conditional certification stage." The first stage takes place at the beginning of discovery. *Comer,* 454 F.3d at 546. "The purpose of the first stage, or conditional certification, is to provide notice to potential plaintiffs and to present them with an opportunity to opt in." *Lindberg,* 761 F.Supp.2d at 757–58. The second stage occurs after all the opt-in forms have been received and discovery has closed. *Comer,* 454 F.3d at 546. The second stage, sometime referred to as "final certification," "is typically precipitated by a motion for 'decertification' by the defendant usually after discovery is largely complete and the matter is ready for trial." *Hipp,* 252 F.3d at 1214 (quoting *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1214 (5th Cir.1995)); *see O'Brien,* 575 F.3d at 583–86 (affirming the district court's decertification of the collective action).

Plaintiffs' motion requests conditional, not final, certification. The burden on the lead plaintiffs in this first stage is "fairly lenient."[4] *Hipp,* 252 F.3d at 1214 (quoting *Mooney,* 54 F.3d at 1214); *Wlotkowski,* 267 F.R.D. at 217 (citing *Olivo v. GMAC Mortg. Corp.,* 374 F.Supp.2d 545, 548 (E.D.Mich. 2004)). The evidentiary standard is low because, at this stage in the suit, very little discovery, if any, has occurred. Because Plaintiffs were afforded limited discovery, they may not rest on the unsupported allegations in their complaint, but must put forth a "modest factual showing" that the putative plaintiffs are similarly situated. *Olivo,* 374 F.Supp.2d at 548 n. 1; *see Lindberg,* 761 F.Supp.2d at 760; *Wlotkowski,* 267 F.R.D. at 217 (finding, under the "fairly lenient" standard at the first stage, plaintiff must " 'submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exists.' " (citation omitted)); *see also Myers,* 624 F.3d at 555 ("The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." (internal citation and citation

---

**3.** The Sixth Circuit has not required district courts to employ the two-stage process. *See O'Brien,* 575 F.3d at 583–85 (discussing the district court's use of the two-stage process without approving or disapproving of the approach); *Comer,* 454 F.3d at 546–48 (discussing, without comment, district court's use of the two-stage process before finding a lack of jurisdiction over the appeal). Although no circuit court requires the use of the two-stage process, a majority of both circuit and district courts have endorsed and employed the two-stage process. *See Myers v. Hertz Corp.,* 624 F.3d 537, 554–55 (2d Cir. 2010) (approving of, but not requiring, district courts to use the two-step certification process); *Whalen v. United States,* 85 Fed.Cl. 380, 383 (Fed.Cl.2009) ("[O]ver the past several years, most courts have generally employed a two-step approach in determining whether it is appropriate to certify a collective action in a given case." (citations omitted)); *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1219 (11th Cir.2001) (endorsing, but not requiring, district courts to use the two-stage process); *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1102–05 (10th Cir. 2001) (finding the district court did not err in using the two-stage process, and noting two other approaches courts have used); *Beauperthuy v. 24 Hour Fitness USA, Inc.,* 772 F.Supp.2d 1111, 2011 WL 750409, at *2 (N.D.Cal. Feb. 24, 2011)

("[T]he majority of courts, including district courts in the Ninth Circuit, have adopted a two-stage certification procedure." (citations omitted)); *McKnight v. D. Houston, Inc.,* 756 F.Supp.2d 794, 800 (S.D.Tex.2010) ("Most courts, including district courts in this circuit, use the 'two-step *ad hoc* approach' as the preferred method for the similarly situated analysis, rather than the Rule 23 requirements." (citations omitted)); *Bouaphakeo v. Tyson Foods, Inc.,* 564 F.Supp.2d 870, 890 (N.D.Iowa 2008) ("The great majority of these courts-including most or all of the district courts within the Eighth Circuit-have championed a two-step approach to determine collective action certification under § 216(b)." (citations omitted)).

**4.** The Sixth Circuit has not affirmatively endorsed any evidentiary burden for the lead plaintiffs at this stage of a collective action suit. *O'Brien* involved an appeal of the district court's decision to decertify, a decision made in the second stage. The opinion in *Comer* mentions the "fairly lenient" standard at the first stage, but only in describing how the district court made its decision. *Comer,* 454 F.3d at 547. The *Comer* opinion cannot be fairly said to have adopted the "fairly lenient" standard. *But see Lindberg,* 761 F.Supp.2d at 758 (stating the plaintiff's burden in the first stage is "fairly lenient" and citing *Comer*).

omitted)). In determining whether to grant a motion at the first stage, a court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Rather, those tasks are addressed at the second stage." *Wlotkowski*, 267 F.R.D. at 217 (internal citation omitted).

Plaintiffs may establish that putative plaintiffs are similarly situated by showing "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585; *see Wlotkowski*, 267 F.R.D. at 217 (finding this a sufficient, but not necessary, showing). Plaintiffs may also establish the similarly situated requirement by showing they "suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation to all plaintiffs." *O'Brien*, 575 F.3d at 585. "Showing a 'unified policy' of violations is not required, though." *Id.* at 584 (citation omitted). Plaintiffs need only show that their positions are similar, not identical, to putative plaintiffs. *Hipp*, 252 F.3d at 1217 (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.1996)).

Plaintiffs here seek conditional certification and notice for the following individuals:

> The Plaintiffs and all current and former hourly employees of Fire Pros Inc. who performed work related to the installation, maintenance and repair of fire sprinkler systems, fire extinguisher systems, chemical cleaning systems and alarm detection systems from February 12, 2006, through the present.

(Pl.Br. 6.) Plaintiffs argue the evidence establishes Fire Pros requires hourly employees to report to the shop before traveling to the job site each day. The evidence also establishes that although Fire Pros pays employees for travel time, it has a company policy of not including that travel time as part of an hourly employee's forty-hour workweek. Plaintiff argues, under regulations promulgated pursuant to the FLSA, when "an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and

to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." 29 C.F.R. § 785.38; *see White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 365 (E.D.Tenn.2006). Plaintiff also argues, under those regulations, "[i]n determining the number of hours worked for which overtime compensation is due, all hours worked (see § 778.233) by an employee for an employer in a particular workweek must be counted." 29 C.F.R. § 778.315; *see White*, 236 F.R.D. at 365.

■ Plaintiffs' "modest factual showing" is sufficient to establish that Fire Pros has a policy of not counting paid travel time for hourly field employees toward the employee's forty-hour workweek for the purpose of determining whether overtime pay is due. Plaintiffs' evidence clearly shows that installers were paid for travel time, but that time was not included in the total time worked each week for the purpose of calculating overtime. (Jackson Dec. ¶¶ 11; Jesiek Dec. ¶¶ 11; Jesiek Daily Activity Report Summaries PgID 286 and 297.) Fire Pros argues installers and the other hourly employees are not similarly situated. Fire Pros argues none of Plaintiffs' evidence establishes any facts about hourly employees other than installers. To the contrary, Jackson and Jesiek both aver, based on "first hand observations and conversations with other employees, *all field employees* performing work in the field ... were paid for travel time to the job site but this time was not included in the total time worked during a work week for the purposes of calculating overtime." (Jackson Dec. ¶ 13; Jesiek Dec. ¶ 13.)

■ Jackson and Jesiek's declarations about their knowledge of how all field employees are paid may be considered at this stage in a collective action suit. Fire Pros aptly points out that some courts have held that only admissible evidence may be considered in § 216(b) motions. *See, e.g., Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 865 (S.D.Ohio 2005). Assuming, for the sake of argument only, that the disputed paragraphs in the declarations are hearsay, the better

approach is to consider those averments in the first stage of a collective action proceeding. A conditional certification action occurs at the outset of discovery, not at the close of discovery, and therefore the admissible evidence standard for summary judgment motions should not apply. *See Reyes v. AT & T Mobility Servs. LLC,* 759 F.Supp.2d 1328, 1331–32 (S.D.Fla.2010). A conditional certification motion does not seek final disposition of the action on the merits, unlike a summary judgment motion, and therefore requiring all evidence for consideration to be admissible has no logical basis. *White,* 236 F.R.D. at 368. Finally, a conditional certification motion does not require an evidentiary hearing and this Court is not admitting documents into evidence at this time. *Longcrier v. HL–A Co., Inc.,* 595 F.Supp.2d 1218, 1222–23 (S.D.Ala.2008).

The redacted payroll records Plaintiffs submit as Exhibit 4 lend support for a broader conditional certification of all field employees, rather than a narrower conditional certification just for installers. Upon review of the redacted payroll records, Fire Pros was able to identify who the individuals are.[5] Fire Pros assert the redacted payroll records are for six employees, three of whom worked as installers. (Def. Resp. 7–8.) Fire Pros asserts the other three employees are technicians, but worked as installers for a portion of 2007, which explains why travel time is reflected in those payroll records. (*Id.* 8.) On this record, the distinction between "installers" and "technicians" is not set in stone. Field employees move between the two employee categories as needed. The Court is mindful that the burden on Plaintiffs here is lenient. Omitting technicians from the opt-in employee class would potentially exclude individuals who worked as installers for only one or two jobs.

■ Finally, Plaintiffs' failure to provide evidence that potential opt-in plaintiffs' desire to opt-in is not fatal to their motion. Defendants argue other courts have required such evidence before conditionally certifying a collective action. *See, e.g., Dybach v. Florida Dep't of Corr.,* 942 F.2d 1562, 1567 (11th

Cir.1991) (remanding for determination of whether there are other employees who desire to opt-in and whether those employees are similarly situated); *Colozzi v. St. Joseph's Hosp. Health Ctr.,* 595 F.Supp.2d 200, 205 n. 5 (N.D.N.Y.2009) ("A plaintiff seeking certification of a collective action under section 216(b) must also establish that there are similarly situated employees who desire to opt-in and become plaintiffs in the case." (citing *Dybach* )). The Sixth Circuit has neither required such a showing, nor held that such a showing is not required. *See Frye v. Baptist Mem'l Hosp., Inc.,* No. 07–2708, 2008 WL 6653632, at *6 (W.D.Tenn. Sept. 16, 2008). Plaintiffs have provided evidence explaining their inability to provide evidence that other potential plaintiffs desire to opt-in. The amended complaint added a retaliation claim. Approximately one week after this lawsuit was filed, the owner of Fire Pros held a company-wide meeting where he singled out several of the named Plaintiffs and described the lawsuit as "frivolous." (ECF No. 26–2 Jackson Dec. No. 2 ¶ 3.) On March 9, 2009, Jackson was terminated for conduct that occurred in February 2008. (*Id.* ¶ 4.) According to Jackson and Tressia Skinner, they have spoken with current employees about joining the lawsuit and the employees have expressed fear of losing their jobs if they were to join. (*Id.* ¶ 7; ECF No. 26–3 Skinner Dec. ¶ 11.) Under these allegations, Plaintiffs' lack of evidence that other potential plaintiffs would opt-in is excused. If, as Fire Pros believes, no employees will opt-in, that argument may be raised as part of a motion to decertify the action.

## B. NOTICE

Plaintiffs submitted a proposed notice and opt-in form. (ECF No. 24.) In a footnote in its response, Fire Pros insists the "proposed notice is also unacceptable." (Def. Resp. 10 n.2.) Fire Pros asserts two concerns. First, Fire Pros argues the notice includes all field employees, including technicians who are not similarly situated to Plaintiffs. This concern has already been addressed. The notice addresses all hourly employees because the

---

**5.** Fire Pros' ability to identify these individuals through the documents is not surprising. Fire

Pros would have generated the documents and provided them to Plaintiffs during discovery.

evidence in the record shows that employees categorized as technicians occasionally worked as installers. At least in those situations, the travel time for those individuals was not included in the calculation of overtime for that work week. Fire Pros second concern relates to the time afforded for employees to opt into the action. The notice states

> Your signed Consent form must be received by Natalie C. Moffett within 60 days of the date of this Notice in order for you to be eligible to participate in this case.

(ECF No. 24 Notice ¶ VIII.) Fire Pros argues the 60–day period exceeds the forty-five day period provided for in the CMO. (CMO ¶ 5b.) Fire Pros is correct and Plaintiffs must change the proposed notice to include a forty-five day period to opt-in, rather than a sixty-day period to opt-in.

Fire Pros requests the Court order Plaintiffs to provide a new proposed notice, "subject to review and objection by Defendant." (Def. Resp. 10 n.2.) The Court has reviewed the proposed notice. Fire Pros has not identified any other concerns about the proposed notice. Accordingly, the proposed notice, with the alteration of the opt-in period, is approved.

### III. CONCLUSION

Plaintiffs have made a modest factual showing that there exists similarly situated individuals who are subject to the same policy of not including travel time toward the calculation of overtime. Plaintiffs have justified their failure to include affidavits, or other documentation, from those similarly situated individuals demonstrating their desire to opt into the class of plaintiffs. Therefore, Plaintiffs' motion for conditional certification (ECF No. 24) is **GRANTED.** Plaintiffs' proposed notice is approved, with the modification that the opt-in period lasts for forty-five days, instead of sixty days. **IT IS SO ORDERED.**